1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8    TERRY LEE MARLIN,

9              Petitioner,                    No. CIV S-05-2043 JKS JFM P

10        vs.

11   KATHY PROSPER, et al.,            ORDER AND

12            Respondents.             FINDINGS AND RECOMMENDATIONS

13   _____/

14            Petitioner is a state prisoner proceeding pro se an in forma pauperis with an

15   application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

16            Petitioner is a state prisoner proceeding in propria persona with an application for

17   a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In 2003, petitioner pled no contest to

18   charges of second degree murder; he was sentenced to fifteen years to life in prison.  In his

19   petition filed October 11, 2005 petitioner raises three claims in his petition that his prison

20   sentence violates the Constitution.

21                              FACTS[1]

22            The facts are taken from the transcript of the preliminary hearing,
              which was adopted by the prosecutor, defense counsel, and the
23            court as the factual basis for the plea.

24   _____

25        [1]  The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Marlin, No. C043447 (December 1, 2004), a copy of which is
26   attached as Exhibit C to the Petition, filed October 11, 2005.

On the evening of March 19, 2002, [petitioner], driving a Cadillac on Green Valley Road, drifted onto the right hand shoulder of the road and then swerved to the left into the path of a car driven by Jeanette A. The Jeanette A. car struck [petitioner's] vehicle broadside. Both Jeanette and her husband Russell A. were injured and their unborn baby was killed. Law enforcement officers found a bottle of Smirnoff Vodka two-thirds empty in [petitioner's] Cadillac. At the hospital, [petitioner] failed the sobriety test and was arrested for drunk driving. A blood sample was taken and, at sentencing, the court observed, without challenge, that [petitioner's] blood alcohol content was "three times the legal limit."

When she was interviewed by California Highway Patrol Officer Gary Nichols, Jeanette said that [petitioner's] vehicle went "out of control, and then it swerved in front of her vehicle." Russell told the officer something "similar, only he thought that the vehicle–it appeared to him that the vehicle was making a left turn in front of him." The officer confirmed that both Russell and Jeanette said that [petitioner's] car entered their lane and that they collided with it.

Jeanette told the officer that she had been driving 45 miles per hour in a 50-mile-per-hour zone. According to the officer, her statement was consistent with the evidence at the scene. The investigating officer did not perform mathematical speed or tire mark calculations relating to the accident. There were no tire marks associated with the victim's car.

At the preliminary hearing, the prosecutor submitted documents concerning [petitioner's] driving history and certified copies of [petitioner's] prior convictions for driving under the influence. At sentencing, the prosecutor noted that [petitioner's] driving history included eight convictions for driving under the influence of alcohol.

According to the plea form, the court was to use the preliminary hearing transcript to establish the factual basis for the plea. [Petitioner] initialed the following statement: "I have discussed the charge(s), the facts, and the possible defenses in my case with my lawyer. I have had enough time to discuss my case with him or her. In my discussions with my lawyer I have been truthful and I have stated all the facts and circumstances that are known to me about my case." The stipulated sentence was 15 years to life for count one with the terms for the other offenses as well as the cohabitant abuse charge in case No. P02CRF0001 to run concurrent to the term for second degree murder.

At the entry of the plea hearing, the court again went over the plea agreement. [Petitioner] confirmed he had initialed the plea form, reviewed the information on the form with his attorney, and

understood everything explained on the form.  [Petitioner] said he felt the murder charge was "overcharged" and he "would go for manslaughter with the enhancements at hand."  The court asked, "I understand you may think that you have a basis for contesting the murder charge, but you are willing to plead as you've indicated here; is that correct?"  [Petitioner] answered it was.  The court then proceeded to review the plea form with [petitioner] who said he understood and gave up his rights.  With respect to the factual basis for the plea, defense counsel stated the parties had agreed to adopt the facts set forth in the preliminary hearing transcript.  The court stated that it would read the transcript prior to sentencing "to validate the factual basis for the more serious charges."  [Petitioner] then entered his no contest plea to the charges.

At the first sentencing hearing on January 24, 2003, the court stated it had received, but had not filed, a copy of what the court described as [petitioner's] "motion to withdraw his plea" and said it had forwarded the document to [petitioner's] attorney because "[petitioner] can't act as his own attorney when he has an attorney of record."  Defense counsel stated [petitioner] had been in contact with Sacramento area lawyers who, defense counsel believed, had caused [petitioner] to have "some misconceptions."  Defense counsel asked for the sentencing to be continued because he had some information for [petitioner] "that may well satisfy his concerns."  The court continued sentencing for a week.

At the continued sentencing hearing on January 31, 2003, defense counsel stated [petitioner] was requesting he be allowed to withdraw his plea.  The trial court said [petitioner] was required to state sufficient legal grounds to support such a request and his attorney said [petitioner] believed he had received ineffective assistance of counsel.  The court also told [petitioner] he had to make his request to withdraw his plea pursuant to a written and noticed motion.  Further discussion took place and the trial court asked if the defense attorney was suggesting this was "in the nature of some kind of *Marsden* [*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)] request" and defense counsel said it was.  Thereafter, the court, the defense attorney, and the [petitioner] retired to the judge's chambers to further discuss [petitioner's] request.

In chambers, [petitioner] generally stated his dissatisfaction with the fact his attorney had not undertaken an accident scene investigation focused on the victim's ability to stop her car in order to avoid the accident when [petitioner] came into her lane.  His attorney defended his tactics and explained why, in his view, such an investigation would not have aided [petitioner's] case.  [Petitioner's] attorney stated however that, even after further investigation into the law, he was "not in favor of withdrawing the plea" because he was convinced [petitioner] would be convicted as charged.  The court told [petitioner] his attorney was "in charge of the tactical decisions in [petitioner's] case."  The trial judge also

3

said he found no grounds for relieving [petitioner's] attorney as counsel or for allowing [petitioner] to withdraw his plea.  The trial court confirmed [petitioner's] attorney was not moving to withdraw the plea.

The parties returned to the courtroom and proceeded with sentencing.

On February 3, 2003, the parties returned to court to correct a clerical error in the sentencing.  During the course of this hearing, the trial court again noted [petitioner's] attorney had been retained and, if the court were to construe the earlier discussion in chambers as a request for time to hire a new attorney, the trial court would have denied the request as untimely.

(People v. Marlin, slip op. at 3-7.)

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

4

1   prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ

2   simply because that court concludes in its independent judgment that the relevant state-court

3   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

4   application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75

5   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

6   question, is left with a 'firm conviction' that the state court was 'erroneous.'")  The court looks

7   to the last reasoned state court decision as the basis for the state court judgment.  <u>Avila v. Galaza</u>,

8   297 F.3d 911, 918 (9th Cir. 2002).

9   II.  <u>Petitioner's Claims</u>

10          A. <u>Claim One</u>

11          Petitioner's first claim is that he was denied the effective assistance of counsel

12   because trial counsel failed to investigate, relying instead on the police report and the district

13   attorney's evidence.  Petitioner presents the expert opinion of Russell E. Darnell, Ph.D., who

14   concluded that:  petitioner was not at fault for the accident; petitioner's vehicle was at a complete

15   stop when it was broadsided by Jeanette A.'s Sentra; the Sentra did not brake prior to impact

16   because there were no skid marks on the pavement; even if the Sentra had braked, the brakes

17   were in such poor condition it would have little or no effect on braking the vehicle; and the

18   Sentra's tires were bald and the brake fluid had not been changed for a long time.  (Pet. filed in

19   the California Supreme Court at 6.)  Dr. Darnell opined that Jeanette A. had plenty of visibility to

20   take evasive action to avoid hitting petitioner's vehicle.  (<u>Id.</u>)

21          The last reasoned rejection of this claim is the decision of the California Court of

22   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court rejected this

23   claim on the ground that:

24          [T]he assistance he received from his attorney was ineffective
            because the attorney failed to investigate whether Jeanette A. was
25          speeding at the time of the accident, whether she had time to react
            to avoid the collision, whether she had room to maneuver around
26          [petitioner's] car, and whether her car experienced brake fade.  Had

his attorney done that, he argues, [petitioner] would have been able to successfully defend against the charges brought against him.

[Petitioner's] argument depends on a flawed premise, that is, that he was not guilty of a crime because Jeanette A. might have avoided the accident.  For that reason, [the court] reject[s] it.

It is well established that a crime victim's contributory negligence is not a defense.  (*People v. Harris* (1975) 52 Cal.App.3d 419, 426-427; *People v. Rodgers* (1949) 94 Cal.App.2d 166, 167; *People v. Marconi* (1931) 118 Cal.App. 683, 687-688; see generally 1 LaFave, Substantive Criminal Law (2d ed. 2003) § 6.5(c), pp. 509-510 (LaFave).)  But, [petitioner] counters, the information he sought to develop goes to the fundamental question of causation, that is, whether there was a causal connection between [petitioner's] acts and the victim's injuries.  While he is correct that in certain situations the acts or failures of a victim or a third party may negate causation, this is not one of them.

For crimes committed under circumstances such as this, the [petitioner] may only be found guilty if it can be said there is a causal connection between his conduct and the harm suffered by the victim.  To establish this causal connection and for criminal liability to attach, the evidence must show that [petitioner's] conduct was both the actual and the legal, or proximate, cause of the death or injuries.  Once that has been shown, the actions or failings of the victims or third parties are of no consequence.  (LaFave, *supra*, § 6.4(a), pp. 465-466.)

Professor LaFave explains:  "[T]his ordinarily means (1) that the [petitioner's] conduct must be the 'but-for' cause (sometimes called the 'cause in fact') of the forbidden result (the word 'cause' in the phrase 'legal cause' or 'proximate cause'), and in addition (2) that the forbidden result which actually occurs must be enough similar to, and occur in a manner enough similar to, the result or manner . . . which [petitioner's] reckless or negligent conduct[] created a risk of happening . . . that the [petitioner] may fairly be held responsible for the actual result even though it does differ or happens in a  different way from the . . . hazarded result (the word 'legal' or 'proximate' in the phrase 'legal cause' or 'proximate cause')."  (LaFave, *supra*, § 6.4(a), p. 466.)

These concepts underlie California criminal law.  Thus, pertinent CALJIC instructions [petitioner] would have faced had he gone to trial, based on cases interpreting the concepts we have discussed above, speak to these issues.

Specifically, CALJIC No. 8.55 provides:  "To constitute [murder] [or] [manslaughter] there must be, in addition to the death of a human being, an unlawful act which was a cause of that death."

CALJIC NO. 3.40 says:  "[To constitute the crime of _____

there must be in addition to the (result of the crime) an unlawful [act] [or] [omission] which was a cause of that (result of the crime).]

"The criminal law has its own particular way of defining cause. A cause of the (result of the crime) is an [act] [or] [omission] that sets in motion a chain of events that produces as a direct, natural and probable consequence of the [act] [or] [omission] the (result of the crime) and without which the (result of the crime) would not occur."

Finally, CALJIC No. 3.41 says: "There may be more than one cause of the (result of the crime). When the conduct of two or more persons contributes concurrently as a cause of the (result of the crime), the conduct of each is a cause of the (result of the crime) if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the moment of the (result of the crime) and acted with another cause to produce the (result of the crime).

"[If you find that the [petitioner's] conduct was a cause of (injury, death, etc.) to another person, then it is no defense that the conduct of some other person[, even the [injured][deceased] person,] contributed to the (injury, death, etc.).]"

The question then is whether [petitioner's] actions were both the actual cause and a legal or proximate cause of the injuries (and the death) that were the result of those actions. [The court] hold[s] they were. Even assuming that Jeanette A. was speeding and inattentive and the brakes on her automobile experienced brake fade, it is apparent from this record that the accident would not have occurred but for [petitioner] losing control of his car due to his intoxication and thereafter driving into Jeanette A.'s lane of traffic. Had he not done so, there would have been no collision. And, there can be no doubt those same actions were a substantial factor that contributed to the accident. This is not a case where [petitioner's] acts were so remote that Jeanette A.'s actions or failures, had they been established, would have been deemed the sole proximate cause of the collision. (See *People v. Lett* (1947) 77 Cal.App.2d 917, 921.)

Given the above, [petitioner's] effort to defend against the charges based on Jeanette A.'s actions or failures would necessarily have been in vain. [Petitioner's] claim of ineffective assistance of counsel for counsel's failure to investigate the conditions of Jeanette A.'s car and the quality of her driving, must fail because his attorney cannot be considered ineffective for refusing to investigate and present a defense that, as a matter of law, was bound to fail.

(People v. Marlin, slip op. at 13-14.)

1   　　　　The Sixth Amendment guarantees the effective assistance of counsel.  The United

2   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

3   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

4   counsel, a petitioner must first show that, considering all the circumstances, counsel's

5   performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

6   identifies the acts or omissions that are alleged not to have been the result of reasonable

7   professional judgment, the court must determine whether, in light of all the circumstances, the

8   identified acts or omissions were outside the wide range of professionally competent assistance.

9   Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that

10  he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice

11  is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

12  result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a

13  probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S.

14  at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

15  determine whether counsel's performance was deficient before examining the prejudice suffered

16  by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an

17  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

18  followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

19  697).

20  　　　　In assessing an ineffective assistance of counsel claim "[t]here is a strong

21  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

22  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

23  is in addition a strong presumption that counsel "exercised acceptable professional judgment in

24  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

25  Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

26  /////

8

1   of sufficient investigation and preparation to make reasonably informed, reasonably sound

2   judgments." Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

3           Where a petitioner pleaded guilty upon the advice of counsel, "the voluntariness

4   of the plea depends on whether counsel's advice was within the range of competence demanded

5   of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  The prejudice prong,

6   in turn, requires a petitioner to show there is a reasonable probability that, but for counsel's

7   errors, he would not have pled guilty and would have insisted on going to trial. Id. at 59;

8   Lambert v. Blodgett, 393 F.3d 943, 980 (9th Cir.2004), cert. denied, 126 S.Ct. 484 (2005).  The

9   strength of the prosecution's case is an indicator of whether petitioner would have accepted a

10  guilty plea even if counsel's advice had not been constitutionally deficient. See Miller v.

11  Champion, 262 F.3d 1066, 1068 & 1074-75 (10th Cir.2001) (strength of prosecution's case

12  should be considered as circumstantial evidence of whether petitioner really would have gone to

13  trial), cert. denied, 534 U.S. 1140 (2002); Ostrander v. Green, 46 F.3d 347, 356 (4th Cir.1995)

14  ("potential strength of the state's case must inform [Hill] analysis, inasmuch as a reasonable

15  defendant would surely take it into account"), overruled on other grounds, O'Dell v. Netherland,

16  95 F.3d 1214 (4th Cir.1996); Lambert, 393 F.3d at 982 & 984 (where alleged deficiency was

17  counsel's failure to investigate a potential defense, prejudice analysis is "objective" and "slim

18  potential for success renders highly doubtful any conclusion that [petitioner] suffered prejudice").

19          Petitioner has failed to demonstrate that the state court's rejection of this claim

20  was objectively unreasonable.  Petitioner contends that defense counsel was ineffective because

21  counsel did not attempt to discover and present evidence that Jeanette A. may have contributed to

22  the death of the fetus by failing to avoid colliding with petitioner's Cadillac while it was stopped

23  in Jeanette's lane.  The state court found, as a matter of state law, that petitioner was guilty of

24  murder because "the accident would not have occurred but for [petitioner] losing control of his

25  car due to intoxication and thereafter driving into Jeanette A.'s lane of traffic." (People v.

26  Marlin, slip opin. at 16-17.)  The state court's interpretation or application of state law is not

9

cognizable in this federal habeas corpus proceeding.  See, e.g., Middleton v. Cupp, 768 F.2d

1083 (9th Cir. 1985).  This court cannot find that defense counsel was ineffective for failing to

investigate a contributory negligence defense that was without merit.

        The record reflects that defense counsel was aware of petitioner's view that

Jeanette A. may have been speeding and believed that Jeanette could have stopped or

maneuvered around petitioner's car to avoid the accident.  (Reporter's Transcript ("RT") at 21.)

Defense counsel responded:

> My review of the information in the case is that is it pretty clear
> that he made a left turn in front of an oncoming vehicle and that
> that was the cause of the collision.  She didn't – there is no
> evidence that she braked.  But her version, and I believe the
> version of the person in her vehicle, is that they just didn't have
> time to react and a collision occurred.  Given the fact that he was a
> .25, his license was suspended, and he has eight prior DUIs, I think
> it is a case that is not going to go well in front of a jury.

(RT 22.)  The trial judge found no grounds for relieving defense counsel or to allow petitioner to

withdraw his plea:

> Well, you were in her lane, bottom line here, Mr. Marlin.  You
> swerved over into her lane, and that's what caused the accident.
>
> She didn't even – either couldn't or didn't stop in time to prevent
> the collision.  And it was the product of you being under the
> influence three times the legal limit.  And you shouldn't have been
> on the road to begin with.

(RT 26.)  Given the facts of this case, and petitioner's criminal history, defense counsel's strategy

to avoid a jury trial was well within the wide range of professionally competent assistance.

        In addition, petitioner cannot demonstrate prejudice under Strickland.  On January

31, 2003, during a hearing on petitioner's complaints about his attorney's representation,

petitioner admitted he was in Jeanette A.'s lane.  (Reporter's Transcript at 20.)  Dr. Darnell's

opinion confirms that the Sentra broadsided petitioner's Cadillac.  Petitioner's car would not

have been broadsided if his car had not been in Jeanette A.'s lane of traffic.  Whether or not

petitioner swerved prior to the impact and whether or not petitioner's car was moving or

10

1    stationary when it was broadsided, the fact remains that petitioner was illegally in Jeanette's lane

2    of traffic at the time of impact.

3            Thus, even if defense counsel had obtained evidence Jeanette A. was somehow

4    negligent in her operation of the vehicle that day, it would not have changed the outcome because

5    petitioner, while intoxicated, drove his car into her lane, causing the accident which resulted in

6    the death of the fetus.  Petitioner's blood alcohol level was .25.  Petitioner had numerous prior

7    drunk driving convictions, and, during the instant offense, his driver's license was suspended and

8    he was on bail or own recognizance from his last drunk driving charge.  (Clerk's Transcript

9    ("CT") at 5; 118.)  The expert opinion of Dr. Darnell would not have changed the outcome here.

10   Indeed, had petitioner gone to trial and been found guilty, he faced a maximum exposure of 15

11   years to life (indeterminate sentencing) plus 10 years (determinate sentence).  (CT 90.)

12           The state court's rejection of petitioner's first claim for relief was neither contrary

13   to, nor an unreasonable application of, controlling principles of United States Supreme Court

14   precedent.  Petitioner's first claim for relief should be denied.

15       B.  Second Claim

16           Petitioner's second claim is that the trial court erred in accepting petitioner's no

17   contest[2] plea because the record demonstrates petitioner did not intend to waive his right to

18   appeal or move for summary judgment upon discovery of new evidence.  Petitioner argues his

19   plea was induced by advice that he would be able to raise on appeal a statutory challenge to the

20   fact California law refuses to criminalize, as a homicidal offense, the nonmalicious but unlawful

21   killing of a fetus.

22           The state court rejected petitioner's claim, finding that petitioner's no contest plea

23   precluded review on the merits.  (People v. Marlin, slip opin. at 10.)  "Issues which merely go to

24   _____

25       [2]   Under California law, a no contest plea has the same effect as a plea of guilty.  See,
     e.g., People v. West, 3 Cal.3d 595 (1970).  Accordingly, federal constitutional principles
     governing guilty pleas apply to petitioner's claims in the instant case.  See Miller v. McCarthy,

26   607 F.2d 854, 856 (1979).

1   the guilt or innocence of a defendant are removed from consideration by entry of the plea.  The

2   existence of a certificate of probable cause cannot widen the scope of review so that it includes

3   non-cognizable issues."  (<u>Id.</u> at 10, citations and internal marks omitted.)

4          "When a plea rests in any significant degree on a promise or agreement of the

5   prosecutor, so that it can be said to be part of the inducement or consideration, such promise

6   must be fulfilled."  <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971).  A guilty plea induced by

7   a promise that the prosecutor does not intend to keep violates due process.  <u>Dillon v. United</u>

8   <u>States</u>, 307 F.2d 445, 449 (9th Cir.1962).  "Plea agreements are subject to contract-law standards

9   of interpretation."  <u>United States v. Kamer</u>, 781 F.2d 1380, 1387 (9th Cir.1986).  To determine

10  whether a sentence complies with the terms of a plea agreement, the court looks to what was

11  reasonably understood by the defendant when he entered his plea.  <u>Id</u>

12         The plea offer was submitted in writing and contained the language that petitioner

13  "will waive appeal on both cases."  (CT 90.)  On January 10, 2003, at the change of plea hearing,

14  petitioner pled no contest and expressly waived his right to appeal.  (RT 2-4.)  When asked by the

15  court if he had any questions, petitioner stated:

16             [PETITIONER]:  My murder charge, I think – I feel highly strongly
17             that is being overcharged because of the simple fact that I admit to
               the act that I did, but the crime does not constitute murder.  I would
18             go for manslaughter with the enhancements at hand.

19             THE COURT:  But you are willing to plead as indicated pursuant
               to this plea bargain.  I understand you may think that you have a
               basis for contesting the murder charge, but you are willing to plead
20             as you've indicated here; is that correct?

21             [PETITIONER]:  Yes, sir.

22  (RT 4.)  Later, on January 31, 2003, petitioner attempted to withdraw the plea.  After the trial

23  court denied the motion to withdraw the plea, petitioner attempted to modify the plea to ensure

24  his right to appeal was restored.  (RT 26-27.)  Defense counsel asked the court whether the court

25  would abide by the district attorney's offer to modify the plea deal to give petitioner back his

26  appeal rights, and the trial court responded:

> Sure.  If the District Attorney is in agreement with that, Mr. Marlin can try to raise any issue that is cognizable on appeal.  Now, whether this statutory challenge that you are talking about is cognizable in light of a guilty plea or no contest plea isn't the question.  That is something –

(RT 27.)  The trial court confirmed with defense counsel that he did not have

> independent grounds to move to withdraw the plea here based upon the additional research that you wanted to do from the time of the plea until now, you just wanted him to be able to have the opportunity to raise the equal protection argument on appeal; right?

(RT 29.)  Defense counsel responded, "That's correct."  (RT 29.)

After argument and victim impact statements, the trial judge confirmed petitioner retained his appeal rights to the extent previously discussed as "our understanding" on that same date.  (RT 40.)

On February 13, 2003, petitioner signed a request for certificate of probable cause, stating the reasonable constitutional grounds going to the legality of the no contest plea were:

> Penal Code Section 187 (2nd degree) is unconstitutionally vague as to its language "Killing a Fetus" without a definition of a living fetus; and constitutes a denial of equal protection in that Penal Code Section 191.5 (Vehicular Manslaughter) is not available, as a lesser included crime, for jury consideration since a fetus is not a human being, within its definition, but would be had the victim been a human being.  Stated simply, how does one kill a fetus unless it is alive and if it is alive, it should be a human being within the definition of Penal Code section 191.5 (Vehicular Manslaughter).

(CT 137.)

The trial court followed through, issuing a certificate of probable cause for such appeal.  (CT 138.)  As noted above, the appellate court found petitioner's appeal was not cognizable.

This record fails to demonstrate petitioner was induced to plead no contest based on a promise he could appeal the constitutional issue.  On January 10, 2003, when petitioner entered his no contest plea, the record demonstrates that petitioner waived his appeal rights.  The

13

1    fact that petitioner attempted to later withdraw the plea does not change that analysis.  Nor does

2    the fact petitioner attempted to modify the plea after his motion to withdraw the plea failed.  (RT

3    26-27.)  These facts do not support petitioner's theory that his no contest plea, entered on January

4    10, 2003, was induced by a later agreement to allow him to appeal the constitutional issue.  See

5    Brady v. United States, 397 U.S. 742, 755 (1970).

6            Thus, the state court's rejection of petitioner's second claim for relief was neither

7    contrary to, nor an unreasonable application of, controlling principles of United States Supreme

8    Court precedent.  Petitioner's second claim for relief should be denied.

9        C.  Third Claim

10           Petitioner's third claim is that the trial court erred in not including the lesser

11   included offense of manslaughter.  Petitioner states "this must have been a deciding factor in any

12   plea agreement, therefore prejudging any plea."  (Pet. at 6.)

13           [Petitioner's] final argument is that his federal due process rights
             were violated by California's statutory scheme, which fails to
14           allow for the crime of manslaughter of an unborn human fetus and
             instead gives the jury an all or nothing choice between convicting
15           for murder or acquitting.

16           Once again, [the court] must determine whether [petitioner's]
             guilty plea foreclosed this claim on appeal.  [The court]
17           conclude[s] that it does.

18           [The court has] no difficulty deciding that the argument [petitioner]
             here asserts challenges his guilt of the crime of second degree
19           murder of a fetus.  Properly stated, [petitioner's] argument is that
             he is not guilty of the crime to which he pleaded no contest, he is
20           guilty of some lesser, unlegislated crime.  "'A guilty plea amounts
             to an admission of every element of the crime and is the equivalent
21           of a conviction.'  [Citation.]" (People v. Jones (1995) 10 Cal.4th
             1102, 1109.)  By his plea, [petitioner] admitted he was guilty of
22           second degree murder of a fetus.  His "due process" claim goes to
             the question of guilt or innocence and is not cognizable on appeal.

23

24   (People v. Marlin, slip opin. at 20-21.)

25           Petitioner waived this claim when he chose to plead guilty.  "When a criminal

26   defendant has solemnly admitted in open court that he is in fact guilty of the offense with which

14

1  he is charged, he may not thereafter raise independent claims relating to the deprivation of

2  constitutional rights that occurred prior to the entry of the guilty plea."  Tollet v. Henderson, 411

3  U.S. 258, 267 (1973); see also United States v. Ruiz, 241 F.3d 1157, 1175 (9th Cir. 2001);

4  Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea

5  precludes federal habeas relief based upon "independent claims" of pre-plea constitutional

6  violations).

7          Neither the federal nor the state courts permit a challenge to evidentiary

8  sufficiency following a guilty plea.  McCarthy v. United States, 394 U.S. 459, 466 (1969) ("a

9  guilty plea is an admission of all the elements of a formal criminal charge")[3]; Kelley v. State of

10 Alabama, 636 F.2d 1082, 1083 (5th Cir.1981); People v. Robinson, 56 Cal.App.4th 363, 369 (3d

11 Dist.1997) ("a guilty plea . . . concedes that the prosecution possesses legally admissible

12 evidence sufficient to prove defendant's guilt beyond a reasonable doubt"); see People v.

13 DeVaughn, 18 Cal.3d 889, 895 (1977) (discussion of limited issues available for appeal

14 following plea).  Petitioner's attack on the evidentiary underpinnings for his conviction is not

15 cognizable in this court.

16          Thus, the state court's rejection of petitioner's third claim for relief was neither

17 contrary to, nor an unreasonable application of, controlling principles of United States Supreme

18 Court precedent.  Petitioner's third claim for relief should be denied.

19          In light of the above, petitioner's motion for evidentiary hearing will be denied.

20          In accordance with the above, IT IS HEREBY ORDERED that petitioner's

21 February 11, 2008 motion for evidentiary hearing is denied.

22          IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

23 habeas corpus be denied.

24 _____

25          [3] McCarthy was decided before Federal Rule of Criminal Procedure 11 was modified to
require more elaborate procedures in the taking of a guilty plea.  See, e.g., United States v.

26 Jaramillo-Suarez, 857 F.2d 1368 (9th Cir.1988).

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

6  failure to file objections within the specified time may waive the right to appeal the District

7  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8  DATED:  March 6, 2008.

9

10                    UNITED STATES MAGISTRATE JUDGE

11

12  001; marl2043.157

13

14

15

16

17

18

19

20

21

22

23

24

25

26